UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
WEIFANG XINLI PLASTIC PRODUCTS, :
:
                Plaintiff, :
: SUPPLEMENTAL
: MEMORANDUM AND
: ORDER
    -against- :
: 1:11-cv-2710 (WFK) (LB)
:
JBM TRADING INC., CHAO MING ZHEN :
a/k/a KEVIN M. ZHEN, :
:
                Defendants. :
------------------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge**

Pursuant to the January 28, 2014 Second Circuit Mandate, the Court provides this supplemental memorandum addressing the default judgment entered against Defendant Chao Ming Zhen. The Court initially referred the issues contained in the Mandate to Magistrate Judge Bloom, who issued a Report and Recommendation advising that the default judgment remain in place. The Court now provides the following supplemental factual findings and reasoning and adopts Magistrate Judge Bloom's Report and Recommendation in its entirety.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Weifang Xinli Plastic Products Co. Ltd. filed this diversity action against Defendants JBM Trading Inc. ("JBM") and Chao Ming Zhen (a.k.a. Kevin M. Zhen) on June 6, 2011. Dkt. 1. Plaintiff, a limited liability company with its principal place of business in China, alleged that it sold and delivered plastic bags to Defendant JBM at the behest of Zhen. *Id.* at ¶¶ 1, 6. However, Zhen allegedly did not pay the "original agreed price and reasonable value of $200,693.49," despite requests from Plaintiff. *Id.* at ¶ 6; *see id.* at Ex. A. Based on this failure to pay, Plaintiff brought suit in this Court alleging six causes of action: 1) breach of contract; 2) accounting ("book account"); 3) insolvency and piercing the corporate veil; 4) breach of

—1—

fiduciary duty; 5) fraud; and 6) breach of New York Business Corporation Law §§ 510, 719, 720. *Id.* at ¶¶ 6-37.

Summonses were issued for Defendants on June 6, 2011. *See* Dkt. Entry of 6/6/2011. On September 27, 2011, Plaintiff filed an affidavit of service from process server David Kleinberg. Dkt. 4. Kleinberg stated that he affixed the summons and complaint to the door of 6 Hilton Court, Hicksville, NY 11801 after making three attempts to serve Zhen at that address. Dkt. 4. Those three attempts took place on June 13, 2011 at 7:19 a.m., June 17, 2011 at 6:05 p.m., and June 21, 2011 at 3:50 p.m. *Id.* Kleinberg stated that he also mailed the summons and Complaint to the address. *Id.* Further, Kleinberg stated that he had spoken to a neighbor at 12 Hilton Court, Hicksville NY, who confirmed that Defendant was not in the military and that he lived at the residence. *Id.* However, the neighbor was unable to divulge Defendant's place of employment. *Id.*

Plaintiff re-filed the process server affidavit on October 1, 2011,[1] along with an affidavit of service on JBM. Dkts. 5-6. In the JBM affidavit, process server Steven C. Avery stated that he had served JBM by delivering the summons and Complaint to Chad Matice, a legal clerk who was authorized to receive service. Dkt. 6.

Neither Defendant filed an Answer or made an appearance, and on November 17 and 18, 2011, Plaintiff filed a Request for Certificate of Default and a proposed Notation of Default. Dkts. 8-9. The Clerk of Court for the Eastern District of New York entered the Default against both Defendants on November 18, 2011. Dkt. 10. On November 28, 2011, Plaintiff moved for Default Judgment against JBM and Zhen, "jointly, severally and individually in the amount of $200,693 and reasonable attorney's fees of $50,173.25 at 25% of the principal amount, interest at

---

[1] On September 28, 2011, Plaintiff was notified that he had filed the affidavit under the wrong filing category. *See* Dkt. Entry of 9/28/2011.

9% from April 28, 2010 to August 31, 2011 at the rate of 9% in the amount of $24,083, costs and disbursements of $450 for a total of $275,399.25 and for such other and further relief this Court deems appropriate." Dkt. 11-13 at 10. Plaintiff provided two declarations in support of the Motion; invoices for the disputed plastic bag shipments; a document from the New York State Department of State showing Chao Ming Zhen as the Chairman or Chief Executive Officer of K.M. Packaging Inc. and Chao Ming Shen as its Principal Executive Officer; a document showing Chao Jie Zhen as the Chairman or Chief Executive Officer of Kevin Multiline Polymer Inc.; a document showing an address of 1643 74th Street 1st Floor, Brooklyn, New York for process on JBM Trading Inc.; deed and mortgage information for 6 Hilton Court, Hicksville, New York; and an affidavit of service of the Motion on JBM and Zhen at the 6 Hilton Court and 1643 74th Street addresses. Dkts. 11-2 – 11-16.

On December 20, 2011, this Court scheduled a hearing on the Motion for Default Judgment. Dkt. Entry of 12/20/2011. On December 23, 2011, however, the Court determined that "an evidentiary hearing [was] unnecessary on the issue of damages in light of the affidavits and documentary evidence" and granted Plaintiff's Motion for Default. Dkt. Entry of 12/23/2011. Default judgment was entered on January 6, 2012. Dkt. 12.

On March 6, 2012, exactly two months after the default judgment had been entered, Zhen filed an "Emergency Motion for pre motion conference re [] Default Judgment." Dkt. 13. The Court granted Defendant's Motion and held a pre-motion conference on March 16, 2012. Dkt. Entry ("Minute Entry") of 3/16/2012. At that conference, the Court ordered Plaintiff to personally serve the summons and Complaint on Zhen by March 21, 2012 and ordered Defendant to file a response to the Complaint by April 11, 2012. Dkt Entry ("Order") of 3/6/2012. Pursuant to the Order, Zhen filed a 12(b)(6) Motion to Dismiss, a Motion to Vacate

Default Judgment, and Motion to Dismiss for Lack of Jurisdiction. Dkts. 16, 22, 23, 26. The Court denied the Motion to Vacate on January 30, 2013 and denied Defendant's other motions as moot. Dkt. Entries of 1/30/2013.

Defendant appealed the Motion to Vacate on February 28, 2013. Dkt. Entry of 2/28/2013. On January 28, 2014, the Second Circuit remanded the matter for supplementation of the record, and the Court referred the issue to Magistrate Judge Bloom. Dkt. Entries of 1/28/2014. Magistrate Judge Bloom issued an order stating that Defendant was to file a supplementary motion to vacate by February 12, 2014, with Plaintiff filing a response by February 26, 2014. *See* Dkt. Entry of 1/29/2014. Defendant failed to file a supplementary motion to vacate, so Magistrate Judge Bloom issued another order requiring Defendant to file a supplementary motion by February 24, 2014. *See* Dkt. Entry of 2/21/2014. Defendant complied with this second order, and Magistrate Judge Bloom presided over an evidentiary hearing on April 1, 2014. *See* Dkt. 33 ("Suppl. Mot. to Vacate"), Dkt. Entry of 4/2/2014. On May 2, 2014, Magistrate Judge Bloom issued her Report and Recommendation, to which Zhen timely objected. Dkts. 46 ("R&R"), 47 ("Objections").

## DISCUSSION

### I. Legal Standard

To the extent that a party makes specific and timely written objections to a magistrate judge's Report and Recommendation, the district court must review *de novo* "those portions of the report . . . to which objection is made." 28 U.S.C. § 636(b)(1)(C); *see* Fed. R. Civ. P. 72(b)(3). A proper objection requires reference to a specific portion of the Report and Recommendation. *Pall Corp. v. Entegris, Inc.*, 249 F.R.D. 48, 51 (E.D.N.Y. 2008) (Seybert, J.) (quoting *Barratt v. Joie*, No. 96–CV–324, 2002 WL 335014, at *1 (S.D.N.Y. Mar. 4, 2002)

(Swain, J.)). If a party "makes only conclusory or general objections, or simply reiterates his original arguments, the Court reviews the Report and Recommendation only for clear error." *Barratt,* 2002 WL 335014, at *1 (citations omitted). Furthermore, even during *de novo* review, the Court will "ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but [were] not, presented to the magistrate judge in the first instance." *Kennedy v. Adamo,* No. 02–CV–1776, 2006 WL 3704784, at *1 (E.D.N.Y. Sept. 1, 2006) (Vitaliano, J.) (citation and internal quotation marks omitted). Upon such review, "[t]he district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

## II. Application

Defendant has argued that service was improper pursuant to New York Civil Practice Law and Rules (N.Y. C.P.L.R.) §308(4); that service was incomplete; that the default judgment should be vacated; and that N.Y. C.P.L.R. § 317 entitles him to vacate the default. The Court will address each argument in turn.

### A. Service Under N.Y. C.P.L.R. § 308(4)

Service of process is governed by Fed. R. Civ. P. 4e(1), which permits service by "following the state law for serving summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." New York service of process is governed by N.Y. C.P.L.R. § 308, which in turn provides that individuals may be served by: delivering the summons to the person to be served, or by delivering the summons to a person of suitable age and discretion at the actual place of business, dwelling place, or usual place of abode of the person to be served, along with mailing the summons to the

person's last known address of residence. *See* N.Y. C.P.L.R. § 308(1)-(2). If service cannot be made under these provisions, a party may rely on the "nail and mail" option, which provides that:

> "where service under paragraphs one and two cannot be made with due diligence, [service may be completed] by affixing the summons to the door of either the actual place of business, dwelling place or usual place of abode within the state of the person to be served and by either mailing the summons to such person at his or her last known residence or by mailing the summons by first class mail to the person to be served at his or her actual place of business[.]"

CPLR § 308(4).

"New York courts have not adopted a per se rule as to what constitutes 'due diligence' under Section 308 . . . .[and] whether attempts to effectuate service constitute due diligence is determined on a case-by-case basis." *Allstate Ins. Co. v. Rozenberg*, 771 F. Supp. 2d 254, 261 (E.D.N.Y. 2011) (Spatt, J.); *see Barnes v. City of N.Y.*, 51 N.Y.2d 906, 907 (1980) ("[I]n determining the question of whether due diligence has been exercised, no rigid rule could properly be prescribed."). As a result, there is no exact list of service requirements constituting "due diligence." *See Sartor v. Utica Taxi Ctr., Inc.*, 260 F. Supp. 2d 670, 674-75 (S.D.N.Y. 2003) (Marrero, J.) (on remand from Second Circuit, collecting cases demonstrating inconsistency in New York state courts).

Nonetheless, a rough standard of due diligence has emerged from the caselaw. For instance, cases have required approximately three attempts at service, optimally on non-consecutive days. *See Lemberger v. Khan*, 18 A.D.3d 447, 447 (2d Dep't 2005) ("[T]he Supreme Court properly concluded that the three attempts made by the plaintiffs' process server to personally serve him at his residence satisfied the due diligence requirement."); *Akler v. Chisena*, 40 A.D.3d 559 (2d Dep't 2007) (same); *Estate of Waterman v. Jones*, 46 A.D.3d 63, 66 (2d Dep't 2007) ("'[D]ue diligence' may be satisfied with a few visits on different occasions and at different times to the defendant's residence or place of business when the defendant could

reasonably be expected to be found at such location at those times."); *Sartor*, 260 F. Supp. 2d at 672 (service attempts made on Friday, January 19, 2001 at 8:45 p.m., Wednesday, January 24, 2001 at 7:00 a.m., and Tuesday, February 20, 2001 at 6:40 p.m. constituted due diligence); *S.E.C. v. Reynolds*, 112 F.3d 505, at *2 (2d Cir. Oct. 18, 1996) ("The three attempts made in this case, including two during non-business hours, satisfy the due diligence requirement."); *Hardy v. Kaszycki & Sons Contractors, Inc.*, 842 F. Supp. 713, 717 (S.D.N.Y. 1993) (Stewart, J.) ("More than two attempts, including some that are during non-business hours constitutes due diligence."). Some courts will find that three attempts is not enough, if the process server does not make inquiries about the defendant's residence or employment. *See, e.g., McSorley v. Spear*, 50 A.D.3d 652, 654 (2d Dep't 2008) (process server's three attempts at defendant's home did not constitute due diligence because the process server "failed to make genuine inquiries about the defendant's whereabouts and place of employment") (internal quotation marks omitted); *Spath v. Zack*, 36 A.D.3d 410, 413 (1st Dep't 2007) (three attempts at service insufficient because "[n]one of these attempts was made on a weekend, nor [was] there any indication that the process server made any inquiries to ascertain [the party's] whereabouts or her place of business"); *Kurlander v. A Big Stam, Corp.*, 267 A.D.2d 209, 210 (2d Dep't 1999) (due diligence not met because there was no evidence that the process server attempted to determine that the address where service was attempted was the actual dwelling of the party). However, a process server's "verification of defendant['s] [] dwelling with a neighbor and three separate attempts to effectuate personal service upon the defendant at [his] residence constitutes sufficient due diligence to justify 'nail and mail' service." *Johnson v. Brickhouse*, No. 01–CV–9386, 2003 WL 355236, at *2 (S.D.N.Y. Feb. 18, 2003) (McKenna, J.) (finding that due diligence was met and denying defendant's Fed. R. Civ. P. 12(b)(2) motion).

These requirements were clearly met here. As set forth in filings and at the evidentiary hearing, Plaintiff's process server made service attempts at the 6 Hilton Court residence on three non-consecutive days, with at least one attempt made before business hours: June 13, 2011 at 7:19 a.m., June 17, 2011 at 6:05 p.m., and June 21, 2011 at 3:50 p.m. *See* Dkts. 5, 45 (Transcript of Proceedings ("Tr.")) at 14, 52-53. The process server also confirmed with Defendant's neighbor that Defendant was not in the military and that he lived at that address. *See* Dkt. 5; Tr. at 54. Further, the process server asked the neighbor whether she knew where the Defendant worked, but the neighbor did not know. *See* Dkt. 5; Tr. at 54. Defendant does not dispute any of these facts. *See* Objections at 3. Accordingly, the Court agrees with Magistrate Judge Bloom's findings and holds that due diligence was established here. *See* R&R at 6-9.

Defendant's objections are not compelling. First, there is no rigid rule that three weekday attempts of service are insufficient unless service is attempted more than once either earlier than 7:45 a.m. or later than 7:00 p.m., and Defendant does not point to a case that so holds. In *Kopec v. GMG Construction Corporation*, Judge Matsumoto found that the plaintiff did not use due diligence because "[t]he process server made only three attempts, all on consecutive weekdays, and none earlier than 7:45 a.m. or later than 7:00 p.m." No. 09-CV-2187, 2011 WL 2650597, at *3 (E.D.N.Y. July 6, 2011) (Matsumoto, J.) (cited in Objections at 3). Those are not the facts here, because the service attempts were made on non-consecutive days, and one attempt was made before 7:45 a.m. *Cf. Austin v. Tri-Cnty. Mem'l Hosp.*, 39 A.D.3d 1223, 1224 (4th Dep't 2007) (finding that "three attempts at service, all on weekdays during normal business hours, did not satisfy the due diligence requirement"). Second, though Defendant points to the length of his commute, the cases he cites do not hold that a process server is required to conduct detailed inquiry into a party's commute and adjust service accordingly. *See* Objections at 3-4; *McSorley*,

50 A.D.3d at 653-54 (not referring to commute time); *Estate of Waterman v. Jones*, 46 A.D.3d 63 (2d Dep't 2007) (same); *Gurevitch v. Goodman*, 269 A.D.2d 355 (2d Dep't 2000) (same). In *Serrano v. Starapoli*, due diligence was not satisfied because "each of the process server's attempts at personal service '[was] made on weekdays during hours when it reasonably could have been expected that [the defendants were] either working or in transit to work.'" 94 A.D.3d at 1085. Here, the attempts were made at 7:19 a.m., 3:50 p.m., and 6:05 p.m., which are well within the timeframes that other cases finding due diligence have approved. *See, e.g., Johnson*, No. 01–CV–9386, 2003 WL 355236, at *2 n.4 (due diligence met with service attempts at 7:15 a.m., 1:40 p.m., and 7:35 p.m.).

Finally, Defendant argues that Plaintiff should have served him at JBM's 1643 74th Street, 1st Floor, Brooklyn, NY address, which is listed in the Complaint. *See* Objections at 5. This argument is futile, however, because due diligence does not necessarily require a process server to serve a party at his place of employment. *See Gross Found., Inc. v. Goldner*, No. 12–CV–1496, 2012 WL 6021441, at *4 (E.D.N.Y. Dec. 4, 2012) (Glasser, J.) ("Given these three attempts at defendant's home on three different days of the week and at three different times [Thursday evening at 6:40 pm, the following Saturday morning at 11:17 am, and the following Tuesday morning at 7:18 am.], when defendant reasonably could be expected to be at home, plaintiff did not need to attempt to serve defendant at his place of business as well."). Even if it did, the Complaint specifically states that the JBM address is a "former principal place of business,"[2] and the process server made inquiry of the neighbor to ascertain the current place of business, to no avail. *See* Compl. at ¶ 2; Dkt. 5; *see also Allianz Ins. Co. v. Otero*, 353 F. Supp. 2d 415, 420 (S.D.N.Y. 2004) (Castel, J.) (due diligence satisfied after three attempts were made

---

[2] Indeed, Plaintiff himself denies working at that location. Tr. at 14-15.

at 7:55 a.m., 2:45 p.m., and 6:50 p.m., and, when asked, neighbor was unable to divulge party's place of employment).

For these reasons, due diligence was satisfied, and service was proper under N.Y. C.P.L.R. § 308(4).

B. Completion of Service

Defendant argues that service was not complete because Plaintiff did not file proof of service within twenty days of the affixing or mailing of the summons and Complaint. *See* Objections at 6 (citing N.Y. C.P.L.R. § 308(4)). However, "the failure to timely file proof of service is [] a 'mere irregularity without jurisdictional implications,'" and it is only when the proof of service is filed *after* default judgment is sought that any negative procedural implications arise. *See Rosato v. Ricciardi*, 174 A.D.2d 937, 938 (3d Dep't 1991) (vacating default judgment that had been entered before the effective filing of the proof of service). Here, Plaintiff filed his proof of service on September 28, 2011, and when notified that he had filed the affidavit under the wrong filing service, he re-filed on October 1, 2011. *See* Dkt. Entry of 9/28/2011, Dkts. 5-6. Plaintiff did not move for default until November 28, 2011. *See* Dkt. 11. The Court cannot discern any prejudice to Defendant based on the procedural irregularity of the proof of service filing. Nor does Defendant point to any caselaw, let alone controlling caselaw, suggesting that the irregularity has any legal effect on the default proceedings. Accordingly, Defendant's objection as to this point is overruled, and the default stands.

C. Good Cause to Vacate

A court may set aside an entry of default for "good cause" shown pursuant to Fed. R. Civ. P. 55(c), and it may set aside default judgment in accordance with Fed. R. Civ. P. 60(b)'s "mistake, inadvertence, surprise, or excusable neglect" standards. Typically, this determination

is "addressed to the sound discretion of the district court," but there is a strong preference for "resolving disputes on the merits." *See N.Y. v. Green*, 420 F.3d 99, 104 (2d Cir. 2005) (internal citations and quotations omitted). The "widely accepted" factors for determining whether good cause has been met are: (1) whether the default was willful; (2) whether a meritorious defense is presented; and (3) whether setting aside the default would prejudice the adversary. *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993). "Although the factors examined in deciding whether to set aside a default or a default judgment are the same, courts apply the factors more rigorously in the case of a default judgment . . . because the concepts of finality and litigation repose are more deeply implicated in the latter action." *Id.; see Peterson v. Syracuse Police Dep't*, 467 F. App'x 31, 33 (2d Cir. 2012) (same).

### 1. Willfulness

Willfulness refers to "conduct that is more than merely negligent or careless." *S.E.C. v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998). Thus, courts will grant motions to vacate when the default was based on "mere administrative or clerical error" but will refuse to vacate a judgment were the moving party "had apparently made a strategic decision to default." *Am. Alliance Ins. Co., Lt. v. Eagle Ins. Co.*, 92 F.3d 57, 60-61 (2d Cir. 1996) (no willfulness shown when defendant's failure to answer the complaint was due to a filing mistake by an in-house counsel clerk). Bad faith is not a necessary predicate to concluding that a defendant acted "willfully" for purposes of Fed. R. Civ. P. 60(b)(1). *See Gucci Am., Inc. v. Gold Ctr. Jewelry*, 158 F.3d 631, 635 (2d Cir. 1998). "Thus, while a determination that the defendant acted in bad faith would certainly support a finding of 'willfulness,' it is sufficient that the defendant defaulted deliberately." *Id.*

The facts here support a finding of willfulness. Default judgment was entered against Defendant on January 6, 2012, and Defendant filed his "Emergency Motion for pre motion conference re [] Default Judgment" on March 6, 2012. Dkts. 12-13. However, Plaintiff provided testimony that Defendant was aware of the lawsuit *at least six months prior* to defaulting. At the evidentiary hearing, Mr. Li (Plaintiff's general manager) testified that Defendant had initiated telephone conversations with him in June and July 2011. Tr. 78-79 (confirming that calls occurred on June 4 and July 4), Tr. 86 (THE WITNESS: "Mr. Zhen specifically talked to me about this lawsuit . . . In two phone calls was about this issue . . . he knew that I was suing him").

Defendant does not substantively dispute Mr. Li's account. At the hearing, Defendant conceded that he had phone conversations with Mr. Li "[o]ne time or two times" in 2011. Tr. at 46; *see id.* at 45 ("Q. Did you have any telephone conversations with Mr. Li in 2011? A. Yes."). Defendant also confirmed that Mr. Li "asked [him] for money" and in response, Defendant told him that JBM was not his company. *Id.* at 45; *see id.* at 46 ("Q. What was the second conversation, second telephone conversation about? A. Same subject, money.").[3] And nowhere in Defendant's Objections does Defendant dispute the occurrence of the phone calls placing him on notice of the pending lawsuit. *See* Objections at 8-9 (calling Mr. Li's testimony "inconsistent and self-serving" but not arguing or pointing to any evidence that the calls did not occur). The

---

[3]Before this line of questioning, Defendant claimed that he learned about the lawsuit "approximately toward [the] end of 2011" but was "not so sure." Tr. 11. Defendant testified that his realization occurred when he received a "letter" regarding the lawsuit stating that "they wanted to take [his] house or something." *Id.* at 12. He then had a friend read the letter for him, approached his attorney one to two weeks later, and then filed the paperwork to reopen the case "immediately." *Id.* However, Defendant waited to file his Emergency Motion until March 6, 2012—meaning that even if, *arguendo*, Defendant had received notice of the lawsuit in December 2011, there was still a three month delay before Defendant made any attempt to re-open the case.

Court therefore credits Mr. Li's testimony and finds that Defendant was on notice of this lawsuit as of mid-2011.

Because the evidence demonstrates that Defendant was on notice of this lawsuit six months before default was entered, the Court finds that the default was willful. *See McNulty*, 137 F.3d at 738-39 (reviewing cases and noting that defaults are willful if defendants "purposely evaded service for months" or "unaccountably delayed more than 10 months before moving to vacate the ensuing default"); *State Farm Mut. Auto. Ins. Co. v. Cohan*, 409 F. App'x 453, 455 (2d Cir. 2011) (district court correctly denied motion to vacate default because "despite receiving timely notice of the suit, defendants did not enter an appearance in the district court until nearly four months later"). This finding provides strong grounds for denying Defendant's motion to vacate. *See Mason Tenders Dist. Council of Greater N.Y. v. WTC Contracting, Inc.*, No. 10–CV–0700, 2011 WL 4348152, at *3 (S.D.N.Y. Sept. 16, 2011) (Cote, J.) (denying motion to vacate default because party had no "credible explanation" for why it did not read its mail and appear in the action).

*2. Meritorious Defense*

"In connection with a motion to vacate a default judgment, a defendant must present more than conclusory denials when attempting to show the existence of a meritorious defense." *Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 173 (2d Cir. 2001) (citing *Enron Oil*, 10 F.3d at 98). "The test of such a defense is measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense." *Id.* at 173 (citing *Enron Oil*, 10 F.3d at 98).

Defendant initially argued that he was not liable because he was "merely an independent contractor, rather than a principal, of JBM Trading Inc. and, thus, the Plaintiff's theory of

piercing the corporate veil to impose individual liability on the Defendant must fail." Suppl. Mot. to Vacate at ¶ 34. Defendant claimed that his role was merely to "place[] orders with the Plaintiff on behalf of JBM Trading Inc. for various goods." *Id.* However, Defendant has managed to offer only bare denials of his ownership, with no supporting facts or evidence. *See* R&R at 14 (explaining that Defendant provided only conclusory denials regarding ownership of JBM); Objections at 12 (stating without explanation that "the Defendant has a meritorious defense as a result of not owning JBM because the first prong of the veil-piercing test would not be met").[4] These are insufficient to establish a meritorious defense. *See Sony Corp. v. Elm State Elecs., Inc.*, 800 F.2d 317, 320-21 (2d Cir. 1986) ("mere conclusory statements" are insufficient and "the moving party on a motion to reopen a default must support its general denials with some underlying facts").

Defendant also contends that it was inappropriate to pierce the corporate veil. *See* Objections at 10-12. Courts use a multi-factor test to determine whether veil piercing is appropriate, with no one factor being decisive. *Freeman v. Complex Computing Co., Inc.*, 119 F.3d 1044, 1053 (2d Cir. 1997). These factors include:

> (1) disregard of corporate formalities; (2) inadequate capitalization; (3) intermingling of funds; (4) overlap in ownership, officers, directors, and personnel; (5) common office space, address and telephone numbers of corporate entities; (6) the degree of discretion shown by the allegedly dominated corporation; (7) whether the dealings between the entities are at arms length; (8) whether the corporations are treated as independent profit centers; (9) payment or guarantee of the corporation's debts by the dominating entity, and (10) intermingling of property between the entities.

*Id.; accord MAG Portfolio Consultant, GMBH v. Merlin Biomed Grp. LLC*, 268 F.3d 58, 63 (2d Cir. 2001).

---

[4] The Court notes that Defendant is unable to identify who the principal of JBM is, other than a man named "John." Tr. 18-19. When asked what "John's" last name is, Defendant stated: "I don't remember. Maybe Woo or Li." *Id.* at 19.

Defendant complains that he is in the "impossible position of . . . disprov[ing] the various factors for determining whether to pierce the corporate veil." Objections at 10. Unfortunately for Defendant, the burden to establish a meritorious and complete defense is his. *See In re Martin-Trigona*, 763 F.2d 503, 505 n.2 (2d Cir. 1985) (rejecting appellant's argument that district court erroneously shifted the burden of proof and holding that "in order to set aside a default the defaulting part must present a meritorious defense demonstrating 'that if relief is granted the outcome of the suit may be different than if the entry of default or the default judgment is allowed to stand'") (citing 10 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure: Civil* § 2697, at 525 (2d Ed. 1983)). The Court has parsed Defendant's Objections and finds that he has not done so. Nowhere does Defendant present any evidence or argument demonstrating that corporate veil piercing is inappropriate in this case. Instead, Defendant argues that the R&R placed too much emphasis on certain factors but fails to affirmatively argue that any *Freeman* factor fell in support of Defendant. *See* Objections at 10-12.

This deficiency is particularly damaging because the record is replete with facts suggesting that veil piercing is appropriate. For instance, Defendant conceded that JBM supplied plastic bags to him and that he in turn placed orders for the Plaintiff for those bags, Tr. 22; that he shared warehouse space with JBM, *id.* at 17; that JBM and Defendant exchanged supplies and money for the space sharing arrangement, *id.* at 18, 20-21; that he sent emails on behalf of JBM, *id.* at 42-43; and that he signed bills of lading and invoices on behalf of JBM,[5] *id.* at 75. Moreover, Defendant admitted that to make payments to Plaintiff, he wired "[s]ometimes [his]

---

[5] In response to questions about payments, Defendant simply testified "I forgot." Tr. 43. In response to questions about the amount of business with Plaintiff, Defendant stated "I don't know." Tr. 43-44.

own money . . . [he] would use [his] company account and wire to Mr. Li." *Id.* at 44. This evidence, which indicates intermingling of funds, overlap in ownership, common office space, and intermingling of capital and profits, provides strong justification for piercing the corporate veil.

Given Defendant's failure to demonstrate that corporate veil piercing is inappropriate, and the host of facts in the record demonstrating that it is, the Court finds that Defendant has not established a meritorious defense. *See State Street Bank and Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 167 (2d Cir. 2004) (defendant must present "evidence of facts that, if proven at trial, would constitute a complete defense"); *see also Travelers Indem. Co. v. Kabir*, 368 F. App'x 209, 211 (2d Cir. 2010) (declining to vacate default judgment because defendant presented an "unsupported and often contradictory account of the relevant events" in his defense). This factor weighs against vacating Defendant's default.

*3. Prejudice*

The Court agrees with the R&R that there is no substantive evidence of prejudice to Plaintiff. R&R 15-16. However, "[a]n absence of prejudice to the nondefaulting party would not in itself entitle the defaulting party to relief from the judgment." *McNulty*, 137 F.3d at 738. When "willful default and the absence of meritorious defenses [are] sufficient to support the [] disposition," the absence of prejudice to Plaintiff is of minimal importance. *See Commercial Bank of Kuwait v. Rafidain Bank*, 15 F.3d 238, 244 (2d Cir. 1994).

Here, the Court has found that the default was willful and that Defendant has not introduced facts supporting a complete defense to this action. Accordingly, the lack of prejudice to Plaintiff is not dispositive, and the Court declines to vacate the default judgment against Defendants.

D. N.Y. C.P.L.R. § 317

Defendant argues that he is entitled to a vacation of default under N.Y. C.P.L.R. § 317. Objections at 13-14. However, that provision applies only when a defendant "did not personally receive notice of the summons in time to defend and has a meritorious defense." N.Y. C.P.L.R. § 317. As established above, Defendant had notice of the lawsuit through the June and July 2011 phone calls, and he does not have a meritorious defense. Thus, Defendant cannot obtain relief pursuant to N.Y. C.P.L.R. § 317.

## III. CONCLUSION

For the reasons set forth above, Defendant's Motion to Vacate is DENIED. Defendant's Objections to the Report and Recommendation are OVERRULED and the Report and Recommendation is hereby adopted in its entirety. The Clerk of Court is directed to transmit this Order and a Supplemental Electronic Index to Record to the U.S. Court of Appeals for the Second Circuit.

SO ORDERED
s/WFK

HON. WILLIAM F. KUNTZ, II
United States District Judge

Dated: August 25, 2014
      Brooklyn, New York